**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

LYNDSAY DRAVES,                       CASE NO.: 1:21-cv-22021

    Plaintiff,

v.

TURBO POWER LLC, A/K/A/
TURBOPOWER, LLC

    Defendants.

_____/

**COMPLAINT FOR GENDER DISCRIMINATION,**
**RETALIATORY ACTION, AND RELATED CLAIMS**

Plaintiff, Lyndsay Draves (the "Plaintiff"), by and through counsel, sues Defendant, Turbo Power, LLC a/k/a Turbopower, LLC (the "Defendant"), and states:

**JURISDICTION AND VENUE**

1. This is an action for employment discrimination and retaliation on the basis of gender arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01, *et seq.*, and related claims.

2. This Court has jurisdiction under 28 U.S.C. § 1343(4) and 42 U.S.C. § 2000e-5(f).

3. This Court has supplemental jurisdiction over the Plaintiff's State law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein were committed in this District.

**PARTIES**

5. The Plaintiff is a female citizen and resident of Clay County, Florida.

6. The Defendant is a Florida limited liability company operating in, and maintaining its principal place of business in, Miami-Dade County, Florida.

7. At all times relevant hereto, the Defendant was an employer within the meaning of 42 U.S.C. § 2000e(b), engaged in an industry affecting commerce, and employed 15 or more employees.

## PROCEDURAL COMPLIANCE

8. Within 180 days of the discriminatory employment practices described herein, the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") and the Florida Commission on Human Relations charging the Defendant with discriminating against her on the basis of gender.

9. On April 14, 2021, the Plaintiff received a Notification of Right to Sue from the EEOC. *See* Notification of Right to Sue attached hereto as Exhibit 1.

## ALLEGATIONS

10. The Defendant is a private commercial entity that provides maintenance and repair services for aircraft engines. The Defendant's company is made up of primarily male employees.

11. In August 2016, the Plaintiff was employed by the Defendant full-time, initially as a stock room clerk and later as an aircraft engine inspector.

12. At all times material, the Defendant knew the Plaintiff desired to become an FAA-certificated aviation maintenance technician ("AMT").

13. There are two ways to become an FAA-certificated AMT. The first is through academic training at an FAA-certificated AMT school. *See* 14 C.F.R. § 65.77. The second is through on-the-job ("OTJ") training by working at a maintenance and repair facility, such as the Defendant, under the supervision of an already FAA-certificated AMT. *Id.* The FAA's certificate for AMTs has two possible ratings: airframe and powerplant.[1]

14. At all times material, the Defendant knew the Plaintiff desired to obtain her FAA-certification, as an AMT with a powerplant rating, through OTJ training. At all times material, the

---

[1] The FAA issues a single certificate with an Airframe (A) rating, a Powerplant (P) rating, or both (A&P). *See* https://www.faa.gov/mechanics/become/.

2

Defendant had male employees who also desired to obtain FAA-certification, as an AMT with a powerplant rating through OTJ training.

15. The Plaintiff worked in the Defendant's PT6 engine[2] department, which consisted of approximately ten (10) employees. Nine (9) of those ten (10) employees were male whereas the Plaintiff was the lone female employee in the department. Moreover, the Plaintiff was one of only a handful of female employees out of over a hundred (100) employed by the Defendant.

16. At the time the Plaintiff was hired, one of the Defendant's employees specifically asked her if she "was sure she could handle working with men" since at that time there were no other female employees on the shop floor.

17. As detailed herein, between August 2016 and April 9, 2019, the Plaintiff was subjected to discrimination and harassment, on the basis of gender, by the Defendant and its agents with authoritative and/or supervisory power over the Plaintiff. In many instances these actions were taken by high ranking employees of the Defendant, including its then quality control manager.

18. During that time, the Defendant had two male employees who were FAA-certificated AMTs and were able or allowed to supervise other employees who sought to gain the OTJ training necessary to become FAA-certificated AMTs themselves.

19. However, one of the Defendant's FAA-certificated AMTs, who could have supervised the Plaintiff's work, was a male employee who categorically stated he would "never train a female." As a result, the Plaintiff's ability to gain the necessary OTJ training to become an FAA-certificated AMT was severely limited.

20. The Defendant's FAA-certificated AMT who would "never train a female" had no issue supervising and training the Plaintiff's male co-workers. Consequently, unlike the Plaintiff, her male co-workers in the PT6 department were given ample opportunities to gain experience

---

[2] The PT6 is a turboprop aircraft engine produced by Pratt & Whitney Canada.

through OTJ training.

21. Throughout her employment, the Plaintiff was continually skipped over for training and advancement in favor of male employees with less time on the job. Additionally, the Plaintiff's male co-workers were given opportunities, privileges, and benefits that were not made available to the Plaintiff on the basis of her gender.

22. On numerous occasions throughout her employment, the Defendant's male employees would make unwelcomed sexual advances and gestures or other verbal or physical conduct of a sexual nature towards the Plaintiff. The Plaintiff endured countless instances where the Defendant's male employees made sexist, lewd, and obscene remarks to her, including "a female shouldn't be doing this job."

23. When the Plaintiff was pregnant with her second daughter, one male employee repeatedly told her that pregnant women "grossed him out," expressing his dissatisfaction with the Plaintiff's then physical appearance.

24. During the same pregnancy, another male employee told the Plaintiff that she was getting so big that she needed a "warning sound" when she went through the shop. Still another male employee told the Plaintiff she should not be allowed to work on the shop floor because she was pregnant. Yet another male employee stated that it was okay for the Plaintiff to miss work because she could "just keep popping kids out and live off welfare."

25. The issues experienced by the Plaintiff where not isolated. They represented a larger pattern or practice of general discriminatory treatment of female employees by the Defendant. The Plaintiff also heard or witnessed countless instances where male employees made unwelcomed sexual advances and gestures or other verbal or physical conduct of a sexual nature towards other females employed by the Defendant.

26. For example, the Defendant's male employees would often leer at female employees or stick their tongues out and pant as female employees passed. On numerous times, the

Defendant's male employees would pretend to hump different objects in front of female employees to simulate sexual acts.

27. A female receptionist was often targeted by the Defendant's male employees with inappropriate comments about her clothing and body and these employees would make grunting or panting noises whenever she would walk out on to the shop floor.

28. A female employee in the records library was also often targeted by the Defendant's male employees who would openly discuss her breasts, as well as, their desire to see her naked and perform lewd sex acts with her. When they saw this female employee they would hold their hands out in front of their chest, as if holding on to breast, and say things like "oh yeah" or "mmmhmm."

29. The Defendant's male employees also harassed female employees whom they deemed unattractive. They equated interactions with one such employee as being forced to "go into her torture room" where they, the male employees, would be forced to perform sex acts against their will.

30. The Plaintiff's male co-workers were never subjected to treatment similar to that experienced by the Plaintiff and other female employees. The Plaintiff brought these issues to the attention of the Defendant on multiple occasions and opposed the unlawful employment practices described herein. However, the Defendant never took substantive action to remedy the gender discrimination and harassment the Plaintiff and other female employees were subjected to.

31. The ongoing gender discrimination and harassment caused the Plaintiff to leave her employment with the Defendant on April 9, 2019. However, a few months later, the Defendant directly contacted the Plaintiff and specifically asked her to return to the Defendant's employment.

32. In other to induce the Plaintiff to return, the Defendant claimed that it had finally taken steps to remedy the past gender discrimination and harassment. The Defendant assured the Plaintiff that "things are better now" and "people aren't talking like that anymore."

33. On or around October 15, 2019, based on the Defendant's assurances, the Plaintiff

5

was re-employed by the Defendant full-time as an aircraft engine inspector in the Defendant's PT6 engine department. Again, the Plaintiff was the only female employed in that department.

34.     However, upon rejoining the Defendant on October 15, 2019, the Plaintiff continued to be subjected to discrimination and harassment, on the basis of gender, by the Defendant and its agents with authoritative and/or supervisory power over the Plaintiff.

35.     At that time, the Defendant only had one FAA-certificated AMT that would have been able to train the Plaintiff. That AMT was the same male employee who stated he would "never train a female." Unfortunately, his views on women mechanics remained unchanged.

36.     Consequently, upon rejoining the Defendant on October 15, 2019, the Plaintiff was deprived of the opportunity to gain the necessary experience though OJT training to become an FAA-certificated AMT. However, the Plaintiff's male co-workers in the PT6 department continued to be given ample opportunity to gain experience through OJT training.

37.     The Defendant knew or should have known about the gender discrimination and harassment in the workplace because of the formal and informal complaints made by the Defendant in opposition to those practices. Additionally, one of the Plaintiff's male co-workers was so disturbed by what he saw and heard that he voluntarily reported to the Defendant the gender discrimination and harassment he witnessed the Plaintiff endure.

38.     In December 2019, the Defendant held a meeting with the PT6 department to discuss gender discrimination and harassment. At the meeting, the Plaintiff was the only female employee in the group and thus the only person in the group that could be discriminated against and harassed on the basis of being female. In doing so, the Defendant placed her at risk of retaliation.

39.     Following that event, the gender discrimination and harassment against the Plaintiff intensified with the acquiescence of the Defendant's management. When the Plaintiff would walk through the Defendant's facilities, the male employees would routinely shout rude and inappropriate comments to her, such as "be careful what you say [to the Plaintiff], she will run and

tell."

40. The Plaintiff continued to endure the gender discrimination and harassment over the following months. The Plaintiff remained in the Defendant's employ continuously from October 15, 2019 until July 10, 2020, when the Defendant terminated her employment.

41. On July 7, 2020, the Plaintiff began to experience COVID-19 symptoms and she was ordered by her health care provider to quarantine for 2 weeks.

42. Later that day, the Plaintiff informed the Defendant that she was experiencing COVID-19 like symptoms and that she would be unable to work because she was ordered to quarantine on advice of her health care provider. The Plaintiff scheduled an appointment for a COVID-19 test.

43. However, over the following days, from July 8 to July 10, 2020, the Defendant contacted the Plaintiff several times through phone calls and text messages. Apparently, the Defendant felt that the Plaintiff was taking too long to be tested for COVID-19.

44. On July 10, 2020, the Defendant orally advised the Plaintiff that she was being terminated due to "financial difficulties" the company was allegedly experiencing. The Defendant informed the Plaintiff that her termination was *not* related to her job performance.

45. The fact the Defendant received in excess of $1 to $2 million dollars from a PPP loan shortly before her termination, specifically to retain employees, strongly suggests that the Defendant's claimed "financial difficulties" as justification for her termination was a pretext.

46. The fact the Plaintiff's termination occurred subsequent to complaining to the Defendant of gender discrimination and harassment strongly suggests that the Defendant's claimed "financial difficulties" as justification for her termination was a pretext.

47. The fact the Plaintiff's termination occurred days after informing the Defendant she was ordered to quarantine due to COVID-19 strongly suggests that the Defendant's claimed "financial difficulties" as justification for her termination was a pretext.

7

48. At the time she was terminated, the Plaintiff was qualified to perform the duties and responsibilities of her position and of other positions with the Defendant.

49. All the acts or omissions complained of herein were performed by agents and/or employees of the Defendant, while acting within the scope of their agency and/or employment, and with the knowledge, permission, and consent of the Defendant.

50. The Plaintiff has retained the undersigned law firm and is obligated to pay reasonable attorney fees for its services.

51. All conditions precedent have either occurred, been performed by the Plaintiff, or have been waived.

**COUNT I – GENDER DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2(a)**

52. The Plaintiff realleges, and incorporates by reference, the allegations set forth above in paragraphs 1 through 51 as if set forth here in full.

53. As a female, the Plaintiff is a member of a protected group.

54. The Plaintiff was qualified for the position she held with the Defendant and competently performed while in that position.

55. On information and belief, subsequent to her termination, the Plaintiff was replaced by a male employee who assumed her job responsibilities.

56. On information and belief, the male replacement was equally or less qualified than the Plaintiff to perform the duties and responsibilities of her position.

57. During her employment, the Defendant discriminated against the Plaintiff in the terms and conditions of her employment on the basis of her gender.

58. During her employment, the Defendant treated similarly situated male employees in similar circumstances more favorably than the Plaintiff.

59. During her employment, the Defendant maintained practices, policies, customs, and usages which discriminated against the Plaintiff and other female employees on the basis of gender

with respect to hiring, placement, promotions, compensation, terms, conditions, and privileges of employment.

60. During her employment, the Defendant failed to maintain a hiring, promotion, and transfer policy based on objective job-related criteria that were uniformly applied to men and women.

61. During her employment, the Defendant limited the Plaintiff's training and opportunity to gain advancement on the basis of her gender.

62. During her employment, the Defendant maintained an informal buddy system which denied women equal access to OJT training in the technical and mechanical jobs.

63. During her employment, the Defendant limited training and promotional opportunities for women by failing to provide them the same opportunities accorded to men.

64. The gender discrimination and harassment had the effect of unreasonably interfering with the Plaintiff's work performance and created an intimidating, hostile, or offensive work environment.

65. The Defendant has responsibility for the acts of sexual harassment in the workplace to which the Plaintiff was subjected.

66. The conduct complained of herein was part of a pattern and practice of gender discrimination by the Defendant constituting a violation of 42 U.S.C. § 2000e-2(a) because they were motivated by gender, even if other factors also motivated that conduct. As such, the Plaintiff was subjected to adverse employment actions on the basis of her gender.

67. The adverse employment actions and ultimate termination of the Plaintiff occurred under circumstances giving rise to discrimination on the basis of her gender and gender was a factor in the Defendant's decision to take those actions and terminate the Plaintiff's employment. Consequently, the Defendant violated 42 U.S.C. § 2000e-2(a).

68. As a direct and proximate result of Defendant's actions, the Plaintiff has suffered and

continues to suffer damages including but not limited to lost past and future compensation, lost life insurance, health insurance, and long-and short-term disability benefits, lost pension benefits, lost profit sharing benefits, expenses involved in seeking other suitable employment, and attorney fees and costs.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant as follows:

(a) an injunction enjoining the Defendant from continuing to engage in any further employment acts, policies or procedures which discriminate in purpose or in effect against any present, former or future employee of the Defendant on the basis of that employee's gender;

(b) requiring the Defendant to immediately reinstate the Plaintiff, if she so elects, to her former position, or position of comparable status, at the same or comparable rate of compensation, including pension and other fringe benefits applicable to said position as if she had never been terminated;

(c) granting the Plaintiff a money judgment in an amount to be determined, against the Defendant:

(i) for back pay, lost pension benefits and fringe benefits, and out-of-pocket pecuniary losses incurred to date, including reimbursement for lost experience factor in higher positions, lost promotional opportunities; and

(ii) for forward pay for all other lost compensation, pension and fringe benefits and other sums to which the Plaintiff shall be entitled, from and after the date hereof;

(d) granting the Plaintiff as part of the judgment liquidated damages in an amount to be determined, against the Defendant for its intentional and willful contravention of 42 U.S.C. § 2000e-2(a);

(e) awarding the Plaintiff costs incurred in the prosecution of this action, including reasonable attorneys' fees; and

(f) granting such further affirmative relief as the Court deems just and proper to

eliminate the effects of the Defendant's unlawful employment practices.

## COUNT II – RETALIATORY ACTION IN VIOLATION OF 42 U.S.C. § 2000e-3

69. The Plaintiff realleges, and incorporates by reference, the allegations set forth above in paragraphs 1 through 51 as if set forth here in full.

70. As a female, the Plaintiff is a member of a protected group.

71. The Plaintiff was qualified for the position she held with the Defendant and competently performed while in that position.

72. On information and belief, subsequent to her termination, the Plaintiff was replaced by a male employee who assumed her job responsibilities.

73. On information and belief, the male replacement was equally or less qualified than the Plaintiff to perform the duties and responsibilities of her position.

74. During her employment, the Defendant discriminated against the Plaintiff in the terms and conditions of her employment on the basis of her gender.

75. During her employment, the Plaintiff made formal and informal complaints to the Defendant regarding the gender discrimination and harassment she was experiencing.

76. By making formal and informal complaints to the Defendant, the Plaintiff engaged in the protected activity of opposing unlawful and discriminatory employment practices.

77. The Defendant terminated the Plaintiff's employment subsequent to the Plaintiff engaging in the protected activity.

78. The Defendant was actually aware of the Plaintiff's protected expressions at the time it took adverse employment action against her.

79. The Plaintiff was fired, in part or in whole, because of her formal and informal complaints to the Defendant regarding the ongoing gender discrimination she was subjected to.

80. The Defendant retaliated against the Plaintiff, denied her opportunities for employment, and terminated her employment on the basis of her having complained of

discrimination and having opposed the unlawful employment practices described herein.

81. The Plaintiff suffered, and will continue to suffer, irreparable injury and monetary damages as a result of the Defendant's retaliatory practices.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant as follows:

(a) an injunction enjoining the Defendant from continuing to engage in any further employment acts, policies or procedures which discriminate in purpose or in effect against any present, former or future employee of the Defendant on the basis of that employee's gender;

(b) requiring the Defendant to immediately reinstate the Plaintiff, if she so elects, to her former position, or position of comparable status, at the same or comparable rate of compensation, including pension and other fringe benefits applicable to said position as if she had never been terminated;

(c) granting the Plaintiff a money judgment in an amount to be determined, against the Defendant:

   (i) for back pay, lost pension benefits and fringe benefits, and out-of-pocket pecuniary losses incurred to date, including reimbursement for lost experience factor in higher positions, lost promotional opportunities; and

   (ii) for forward pay for all other lost compensation, pension and fringe benefits and other sums to which the Plaintiff shall be entitled, from and after the date hereof;

(d) granting the Plaintiff as part of the judgment liquidated damages in an amount to be determined, against the Defendant for its intentional and willful contravention of 42 U.S.C. § 2000e-3;

(e) awarding the Plaintiff costs incurred in the prosecution of this action, including reasonable attorneys' fees; and

(f) granting such further affirmative relief as the Court deems just and proper to eliminate the effects of the Defendant's unlawful employment practices.

## COUNT III – GENDER DISCRIMINATION AND RETALIATORY ACTION
## IN VIOLATION OF FLA. STAT. § 760.10

82. The Plaintiff realleges, and incorporates by reference, the allegations set forth above in paragraphs 1 through 51 as if set forth here in full.

83. As a female, the Plaintiff is a member of a protected group.

84. The Plaintiff was qualified for the position she held with the Defendant and competently performed while in that position.

85. On information and belief, subsequent to her termination, the Plaintiff was replaced by a male employee who assumed the Plaintiff's job responsibilities.

86. On information and belief, the male replacement was equally or less qualified than the Plaintiff to perform the duties and responsibilities of her position.

87. During her employment, the Defendant discriminated against the Plaintiff in the terms and conditions of her employment on the basis of her gender.

88. During her employment, the Defendant treated similarly situated male employees in similar circumstances more favorably than the Plaintiff.

89. During her employment, the Defendant maintained practices, policies, customs, and usages which discriminated against the Plaintiff and other female employees on the basis of gender with respect to hiring, placement, promotions, compensation, terms, conditions, and privileges of employment.

90. During her employment, the Defendant failed to maintain a hiring, promotion, and transfer policy based on objective job-related criteria that were uniformly applied to men and women.

91. During her employment, the Defendant limited the Plaintiff's training and opportunity to gain advancement on the basis of her gender.

92. During her employment, the Defendant maintained an informal buddy system

which denied women equal access to OJT training in the technical and mechanical jobs.

93. During her employment, the Defendant limited training and promotional opportunities for women by failing to provide them the same opportunities accorded to men.

94. The gender discrimination and harassment had the effect of unreasonably interfering with the Plaintiff's work performance and created an intimidating, hostile, or offensive work environment.

95. The Defendant has responsibility for the acts of sexual harassment in the workplace to which the Plaintiff was subjected.

96. The conduct complained of herein was part of a pattern and practice of gender discrimination by the Defendant constituting a violation of Fla. Stat. § 760.10 because they were motivated by gender, even if other factors also motivated that conduct. As such, the Plaintiff was subjected to adverse employment actions on the basis of her gender.

97. During her employment, the Plaintiff made formal and informal complaints to the Defendant regarding the gender discrimination and harassment she was experiencing.

98. By making formal and informal complaints to the Defendant, the Plaintiff engaged in the protected activity of opposing unlawful and discriminatory employment practices.

99. The Defendant terminated the Plaintiff's employment subsequent to the Plaintiff engaging in the protected activity.

100. The Defendant was actually aware of the Plaintiff's protected expressions at the time it took adverse employment action against her.

101. The Plaintiff was fired, in part or in whole, because of her formal and informal complaints to the Defendant regarding the ongoing gender discrimination she was subjected to.

102. The Defendant retaliated against the Plaintiff, denied her opportunities for employment, and terminated her employment on the basis of her having complained of discrimination and having opposed the unlawful employment practices described herein.

103. The adverse employment actions and ultimate termination of the Plaintiff occurred under circumstances giving rise to discrimination on the basis of her gender and gender was a factor in the Defendant's decision to take those actions and terminate the employment of the Plaintiff. Consequently, the Defendant violated Fla. Stat. § 760.10.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant as follows:

(a) an injunction enjoining the Defendant from continuing to engage in any further employment acts, policies or procedures which discriminate in purpose or in effect against any present, former or future employee of the Defendant on the basis of that employee's gender;

(b) requiring the Defendant to immediately reinstate the Plaintiff, if she so elects, to her former position, or position of comparable status, at the same or comparable rate of compensation, including pension and other fringe benefits applicable to said position as if she had never been terminated;

(c) granting the Plaintiff a money judgment in an amount to be determined, against the Defendant:

(i) for back pay, lost pension benefits and fringe benefits, and out-of-pocket pecuniary losses incurred to date, including reimbursement for lost experience factor in higher positions, lost promotional opportunities; and

(ii) for forward pay for all other lost compensation, pension and fringe benefits and other sums to which the Plaintiff shall be entitled, from and after the date hereof;

(d) granting the Plaintiff as part of the judgment liquidated damages in an amount to be determined, against the Defendant for its intentional and willful contravention of Fla. Stat. § 760.10;

(e) awarding the Plaintiff costs incurred in the prosecution of this action, including reasonable attorneys' fees; and

(f) granting such further affirmative relief as the Court deems just and proper to

eliminate the effects of the Defendant's unlawful employment practices.

### COUNT IV – RETALIATORY ACTION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT AND VIOLATION OF THE FAMILIES FIRST CORONAVIRUS RESPONSE ACT

104. The Plaintiff realleges, and incorporates by reference, the allegations set forth above in paragraphs 1 through 51 as if set forth here in full.

105. The Fair Labor Standards Act (the "FLSA") prohibits employers from discharging or in any other manner discriminating against any employee because the employee exercises their rights under the FLSA. 29 U.S.C. § 215.

106. Under the Emergency Paid Sick Leave Act ("EPSLA") of the Families First Coronavirus Response Act ("FFCRA") a qualifying full-time employee is entitled to up to eighty (80) hours of paid sick leave, at the employee's regular rate of pay, where the employee is unable to work because the employee is quarantined (pursuant to Federal, State, or local government order or advice of a health care provider), and/or experiencing COVID-19 symptoms and seeking a medical diagnosis.

107. Additionally, the FFCRA creates causes of action for employees whose rights were disregarded or against whom employers retaliate for exercising those rights by making such claims actionable under the FLSA. *See* 29 C.F.R. § 826.150(a).

108. At all times material hereto, the Plaintiff was a full time employee of the Defendant and eligible for paid sick leave under the EPSLA, a provision of the FFCRA.

109. Immediately prior to the Plaintiff's termination, the Plaintiff notified the Defendant that she was experiencing COVID-19 symptoms, was seeking a medical diagnosis, and that she would be unable to work because she was ordered to quarantined pursuant to advice of a health care provider and/or Federal, State, or local government order.

110. By notifying the Defendant of the above and requesting paid time off during her illness, the Plaintiff attempted to exercise her rights to paid sick leave under the FFCRA and the

FLSA.

111.    The Defendant violated the FFCRA and the FLSA by refusing to allow the Plaintiff to take sick time for Covid-19.

112.    Moreover, the Plaintiff suffered an adverse employment action in that she was terminated after attempting to exercise her rights under the FFCRA and the FLSA.

113.    The Plaintiff was fired, in part or in whole, because she attempted to exercise her rights under the FFCRA and the FLSA as described herein.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant awarding monetary compensation in an amount to be determined, awarding costs incurred in the prosecution of this action, including reasonable attorneys' fees, and for any further legal or equitable relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38.

Dated June 1, 2021.

                            Respectfully Submitted By:

                            Gulisano Law, PLLC
                            5645 Coral Ridge Drive, Suite 207
                            Coral Springs, FL 33076
                            954-947-3972 – office
                            michael@gulisanolaw.com – email

                            s/ Michael Gulisano
                            Michael Gulisano, Esquire
                            Florida Bar No.: 87573